## Case No. 1,904.

### BRITTON v. BUTLER.

[11 Blatchf. 350.][1]

Circuit Court, S. D. New York. Nov. 6, 1873.

LIMITATIONS—RUNNING OF STATUTE—TORT BY MILITARY OFFICER.

1. In April, 1861, a firm of three partners, of which the plaintiff was a member, at Natchez, was dissolved by war. Afterwards and during the war, and while Natchez was in the enemy's territory and New Orleans was in the possession of the forces of the United States, the other two partners drew, at Natchez, a draft on a bank in New Orleans, in order to avail themselves, in the enemy's territory, of money or credit which they had with the bank. Commercial intercourse between the two places was unlawful. The defendant, as a military officer of the United States, took the draft from an emissary of the drawers, who was seeking to reach New Orleans from the enemy's territory, and compelled the payee to endorse it, and then collected its amount from the bank, and accounted therefor to the United States. The plaintiff assumed to treat the money as received by the defendant to the plaintiff's use, and to recover it: Held, that, on that theory, the act of the defendant was a wrong done under color of his authority as a military officer, within section 7 of the act of March 3d, 1863 (12 Stat. 757), and, as such, was within the limitation of two years, within which, after the commission of such wrong, the action should have been brought.

2. The defendant had been, for more than two years after the transaction and before the commencement of this suit, within reach of the process of courts in the United States: Held, that the act of June 11th, 1864 (13 Stat. 123), did not relieve the plaintiff from the effect of the limitation.

[At law. Action by William A. Britton against Benjamin F. Butler to recover the proceeds of certain drafts seized by defendant in his capacity of military commander at New Orleans during the Civil War. Judgment for defendant.

[For decisions sustaining a demurrer to the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

special pleas interposed by defendant to the declaration, see Case No. 1,903.]

Everett P. Wheeler, for plaintiff.

George Bliss, Dist. Atty., and John E. Develin, for defendant.

WOODRUFF, Circuit Judge. It is not claimed, in this case, that the firm of W. A. Britton & Co., of Natchez, had any special deposit in the Citizens' Bank of New Orleans, which could be identified as their money. At most, if money received by that bank stood to their credit, as a deposit subject to draft, in the ordinary course of business, that made them creditors of the bank and the bank their debtors. It was conceded, on the trial, that, in April, 1861, the firm of W. A. Britton & Co., then composed of the plaintiff and Audley C. Britton and G. W. Koontz, was dissolved, by war and the departure of the plaintiff from Natchez, then within the territory of the rebels, the other two of the partners still remaining at Natchez. The check mentioned in the pleadings herein was drawn not by the plaintiff, but by his said former partners, at Natchez, for the purpose of availing themselves, within rebel territory, of money or credit which they had with the said bank. By compelling the payees named in the check to endorse the same to him, the defendant induced the bank to pay to him the sum named in the check, on the presentation thereof. It was also conceded, on the trial, that the check was void, as drawn in violation of the law and against the prohibition of commercial intercourse between the states in rebellion and territory in the occupation of the government. This the bank must be deemed to have known, and their payment, therefore, must be deemed to have been made on the requirement of the defendant. The defendant was not acting nor professing to act as agent of the said firm, but in behalf of the government, upon the idea that the debt so due from the bank was forfeited to the United States.

Whether the payment of a sum of money to the defendant, equal in amount to a debt due to W. A. Britton & Co., under the circumstances alleged in this case, does, in law, enable that firm to treat it as money paid to the defendant, or had and received by him to their use; whether their relation to the bank, as creditor, was affected thereby; whether money of the Citizens' Bank, not identified or capable of identification, and to which the plaintiff had no specific title, received in direct hostility to the right of the plaintiff, in denial of his right, though it may be illegally received, may, by fiction of law, be treated as received for the plaintiff's use; whether, if an action against the defendant, for such money, as had and received for the use of the firm, would lie, the plaintiff, in his sole name, can maintain such an action therefor, as had and received to

his use; whether, where the suit is brought in the state court, and therein the defendant pleads the general issue only, after which the suit is removed to this court, and, instead of proceeding upon the issue joined in the state court, the plaintiff waives those pleadings and declares anew in this court, the defendant may here insist upon the nonjoinder of the other partners or the want of sole title in the plaintiff, under the general issue here pleaded; whether the defendant had any sufficient legal right or authority to receive the money which was paid to him, and pay it over to the United States; whether so paying over the money is any protection to the defendant against an action by the plaintiff; whether the act complained of was in the exercise of a lawful authority in time of war, or in the exercise of such a jurisdiction that the defendant cannot be made liable therefor in this court—these, and, perhaps, some other questions have been the subject of testimony and of discussion in this case. I am of opinion, that, whatever answers be given to these questions, the action cannot be maintained.

The theory of the case is, that the defendant, as major general commanding the forces of the United States, then holding the city of New Orleans and its immediate vicinity in actual military occupation, took from an emissary of W. A. Britton & Co., who was seeking to effect an entrance from rebel territory, through the lines of the loyal forces, into New Orleans, the check in question; that such check was drawn at Natchez, within the rebel territory, not by the plaintiff but by his said late copartners, for the purpose above stated; and that the defendant, by means of his said military authority, as major general commanding, or by color thereof, compelled the payees of the check to endorse the same to him, and made use of such check as a means or instrument of drawing the amount thereof from the Citizens' Bank of New Orleans, which bank paid to him the sum therein specified. It is proved, that the defendant received the money in his capacity of major general, and that he received it professedly for the United States, claimed title thereto on behalf of the United States, and duly accounted therefor to the United States. If, as the plaintiff insists, such receipt of the money was without authority or right, and it be conceded that the plaintiff can, as matter of law, treat the money thus received by the defendant as his identical money, received by the defendant to the plaintiff's use, then the act of the defendant was plainly a wrong done by the defendant by virtue or under color of his authority as major general of the United States assigned to the command of the forces at New Orleans, within section 7 of the act of March 3, 1863 (12 Stat. 757. See, also, the act of May 11th, 1866; 14 Stat. 46), and, as such, is within the limitation of two years, within which, after such wrong, the action should have been brought. The plaintiff cannot, by the mere form of his action, do away with the statute, which was intended to protect the officers of the government against suits or actions in any form for the alleged wrong, unless brought within the time limited. Whether, in a given case, a plaintiff brings the action in form as for a tort, or on the alleged implied contract, the statute equally applies.

From January, 1863, until the action was commenced, the defendant was in Washington, D. C., New York, Massachusetts, or that part of Virginia which was excepted by the president from his proclamation of January 1st, 1863 (12 Stat. 1268), declaring what states and parts of states were in rebellion. It is testified that, in that part of Virginia the judicial tribunals were open to the prosecution of civil suits, and that process might at any time have been served upon him. There would seem, therefore, to be no reason why such process should not have been served on him there, which was not equally applicable to the state of New York itself. If this be so, then the saving act of June 11th, 1864 (13 Stat. 123), does not relieve the plaintiff from the effect of the previous limitation. The action was not commenced, as conceded on the trial, until June 6th, 1865.

Judgment must be directed for the defendant.